David R. Greifinger, Esq. (SBN 105242)
tracklaw@me.com
Calvin A. Marshall, Esq. (SBN 318587)
calvin@greifingerlaw.com
**LAW OFFICES OF DAVID R. GREIFINGER**
15515 W. Sunset Boulevard, Unit 214
Pacific Palisades, California 90272
Telephone: (424) 330-0193
Facsimile:  (831) 920-4864

John A. Marshall, Esq. (SBN 109557)
john@marshallbusinesslaw.com
**MARSHALL & ASSOCIATES**
26565 W. Agoura Road, Suite 200
Calabasas, CA 91302
Telephone: (818) 617-9337
*Attorneys for Plaintiff, Rodney Houriani*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODNEY HOURIANI, an individual, on his own behalf and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    vs.<br><br>BUCK KNIVES, INC., a Nevada Corporation,<br><br>    Defendant. | Case No. 2:21-cv-01908-DSK-SK<br><br>[Assigned to Hon. Dale S. Fischer]<br><br>CLASS ACTION<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:  August 8, 2022<br>Time: 1:30 p.m.<br>Courtroom 7D, First Street Courthouse<br><br>Complaint Filed:    March 1, 2021 |

1  **TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF**
2  **RECORD:**

3  **PLEASE TAKE NOTICE** that on August 8, 2022, at 1:30 p.m., or as soon
4  thereafter as counsel may be heard, in Courtroom 7D of the above-captioned
5  court, located at 350 West First Street, Los Angeles, California 90012, the
6  Honorable Dale S. Fischer presiding, Plaintiff Rodney Houriani will, and hereby
7  does, move the Court to:

8  1.  Enter an order finally approving the settlement described in the Joint
9  Stipulation of Class Action Settlement and Release (Dkt. 29-2) preliminarily
10  approved by the Court on February 17, 2022;

11  2.  Finally certify the Settlement Class; and

12  3.  Enter a judgment to dismiss the action.

13  This Motion is based upon: (1) this Notice of Motion and Motion; (2) the
14  Memorandum of Points and Authorities in Support of Motion for Final Approval
15  of Class Action Settlement; (3) the Declaration of David Greifinger; (4) the
16  Declaration of Amy Lechner regarding the Class Notice and Claims
17  Administration; (5) the [Proposed] Order and [Proposed] Judgment concurrently
18  filed; Granting Preliminary Approval of Class Action Settlement; (6) the records,
19  pleadings, and papers filed in this action; and (7) such other evidence or argument
20  as may be presented to the Court.

22  Dated: July 7, 2022                    Respectfully submitted,

24                                         /s/David R. Greifinger
                                           David R. Greifinger

1

# TABLE OF CONTENTS

Introduction..........................................................................................................1

Factual and Procedural Background......................................................................2

  A.  Overview of the Litigation...........................................................................2

  B.  The parties thoroughly investigated the factual and legal issues....................2

  C.  The Parties settled at a settlement conference before Magistrate Steve Kim. 3

  D.  The terms of the Settlement resolve claims between Defendant and the

  Settlement Class ..........................................................................................4

    1.  *Composition of the Settlement Class* ........................................................4

    2.  *Settlement Consideration* ........................................................................4

    3.  *Release by Plaintiff and the Settlement Class* ...........................................5

  E.  The notice and claims administration processes were completed under the

  Court's order..............................................................................................6

Argument .............................................................................................................8

  I.  This Court should grant final approval of the Settlement.............................8

    A.  Class certification requirements are met....................................................8

    B.  The factors to be considered by the court favor

      approval of the settlement…..……………………………………………8

     *1  Class Representative and Plaintiff's' Counsel adequately represented*

     *the Class and the settlement was negotiated at arm's length* .....................10

     *2.  The Settlement provides valuable relief to the Class* ............................10

      a.  The relief provided by the settlement is adequate taking into account

      the costs, risks, and delay of trial and appeal. .........................................11

      b.  The Settlement provides an effective method of processing claims and

      distributing relief to the Settlement Class.................................................12

     *4.  The Settlement treats Class Members equitably relative to each other.*

      .................................................................................................................13

5.    *The extent of discovery completed supports final approval.* ...............13

6.   *The views of experienced Class Counsel supporting the Settlement
should be accorded substantial weight.* ......................................14

7.   *The reaction of Class Members to the proposed Settlement supports
final approval.* ..........................................................15

8.   *The Settlement satisfies the Bluetooth factors* ......................................16

Conclusion ...............................................................................17

1

**TABLE OF AUTHORITIES**

2  **Federal Cases**

3  *Allen v. Bedolla*, 787 F.3d 1218 (9th Cir. 2015) ……………………………… 10,16

4  *Bayat v. Bank of the West,* 2015 WL 1744342 (N.D.Cal. April 15, 2015)………15

5  *Chambers v. Whirlpool Corp.*, 983 F.3d 645 (9th Cir. 2020)……………………. 8

6  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992)………………...8

7  *D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ………………………...16

8  *Eisen v. Porsche Cars N. Am*., 2014 WL 439006

9     (C.D.Cal. Jan. 30, 2014)..................................................................13, 15

10  *Grannan v. Alliant Law Group, P.C*., 2012 WL 216522

11     (N.D. Cal. Jan. 24, 2012)………………………………………...15

12  *Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir. 1998)……………………...8, 9

13  *Hyundai & Kia Fuel Economy Litigation,* 926 F.3d 539

14     (9th Cir. 2019)…………………………………………………………..8

15  *In re Bluetooth Headset Products Liability Litigation,* 654 F.3d 935

16     (9th Cir. 2011) ………………………………………………………9,16

17  *In re Extreme Networks, Inc. Securities Litigation,* 2019 WL 3290770

18     (N.D. Cal. July 22, 2019)…………………………………………………9

19  *In re Online DVD-Rental Antitrust Litigation*, 779 F.3d 934, 942

20     (9th Cir. 2015)…………………………………………………………10

21  *In re Pacific Enterprises Securities Litigation*, 47 F.3d 373

22     (9th Cir. 1995)…………………………………………………………14

23  *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products*

24     *Liability Litigation*, 895 F.3d 597 (9th Cir. 2018) ……………14, 16, 17

25  *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234 (9th Cir. 1998)……....10, 13

26  *Milligan v. Toyota Motor Sales, U.S.A*., 2012 WL 10277179

27     (N.D. Cal. Jan. 6, 2012)………………………………………………15

28  *Moore v. Verizon Communications Inc*., 2013 WL 4610764

1

1    (N.D.Cal. Aug. 28, 2013)……………………………………………..15

2  *National Rural Telecommunications Cooperative v. DIRECTV, Inc.*,

3    221 F.R.D. 523 (C.D. Cal. 2004) …………………………………..11

4  *Officers for Justice v. Civil Service Commission of the City and County of*

5    *San Francisco,* 688 F.2d 615 (9th Cir. 1982) ...………………………10

6  *Perez v. Asurion Corp.*, 501 F.Supp.2d 1360 (S.D.Fla. 2007)…………………...15

7  *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009)……………...11

8  *Rose v. Bank of America Corp.*, 2014 WL 4273358

9    (N.D.Cal. Aug. 29, 2014)…………………………………………...15

10 *Spillman v. RPM Pizza, LLC,* 2013 WL 2286076 (M.D.La. May 23, 2013)…….15

11 *Sullivan v. DB Investments, Inc.*, 667 F.3d 273 (3d Cir. 2011)…………………..15

12 *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338 (2011) …………………………8

13 **Rules**

14 Rule 23(a) …………………………………………………………………7

15 Rule 23(b) …………………………………………………………………7

16 Rule 23(e) …………………………………………………………………..*passim*

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### Introduction

On February 17, 2022, the Court granted preliminary approval of the Joint Stipulation of Class Action Settlement and Release (Dkt. 29-2), and approved distribution of the Notice of Class Action Settlement to all Class Members. (Dkt. 33.) Class Members were given 90 days to object to, or opt out of, the Settlement. Now that the 90-day deadline has passed, Plaintiff RODNEY HOURIANI ("Plaintiff") is pleased to report that no Class Members objected to the Settlement, and only 27 individuals opted out of the Settlement Class. (Lechner. Decl., ¶ 14.) Plaintiff accordingly moves the Court to grant this motion for final approval of the class action settlement. This motion is unopposed by Defendant BUCK KNIVES, INC. ("Defendant") (collectively with Plaintiffs, the "Parties").

If approved, the Settlement will provide Class Members with immediate and valuable relief consisting of $10 cash payments (with a maximum of $30 per Class Member) and injunctive relief prohibiting Defendant from representing that sheaths made outside the U.S.A. are manufactured in the U.S.A. Plaintiff and his counsel believe the Settlement is fair and reasonable, and provides Class Members similar, if not superior, remedies to what they could otherwise have expected to receive if the case had been successfully tried, but without the delay and risks associated with continued litigation and trial.

By granting preliminary approval, the Court has already determined that the Settlement is fair and reasonable, subject to objections. With no objections to the Settlement, the Court's preliminary assessment has been separately endorsed by the Settlement Class. Accordingly, the Court should grant final approval.

**Factual and Procedural Background**

**A.     Overview of the Litigation**

Since at least 2017, Defendant sold knife-and-sheath combinations (the "Subject Products") in packaging that on one side included American Flag graphics and "USA MADE," and on the other side included a label stating "MADE IN USA." (See First Amended Complaint ("FAC"), ¶ 11.)  (Dkt. 10.) Website advertising for the Subject Products stated that the products were "Made in the USA." (*Ibid.*) The Subject Products' website even depicted the American Flag and "Made in the USA" logos superimposed over photographs of the sheath. (*Ibid.*) The sheaths for the subject products are in fact made in Mexico. (See FAC, ¶ 12.)

Plaintiff filed the Complaint in this action on March 1, 2021. (Dkt. 1.) The operative First Amended Complaint (FAC) was filed on March 25, 2021. (Dkt. 10.) The FAC asserts claims for (1) Violations of California's Consumers Legal Remedies Act (Civ. Code, § 1750, et seq.); (2) Violations of California's Unfair Competition Laws (Bus. & Prof. Code, § 17200, et seq.); and (3) Violations of California's False Advertising Laws (Bus. & Prof. Code, § 17500, et seq.), all related to Defendant's alleged misrepresentations that the Subject Products were entirely made in the U.S.A.

**B.     The parties thoroughly investigated the factual and legal issues.**

The settlement in this matter is the product of informed negotiations following extensive investigation by Plaintiff's counsel. Before and after filing the complaint, Plaintiff's counsel investigated and researched the claims of Plaintiff and Class Members relating to the representation by Defendant that its knife-and-sheath combinations were made in the U.S.A. (Greifinger Decl., ¶ 3.)

After the filing of the complaint, Plaintiff's investigation entailed an exchange of information under formal and informal discovery methods, including interrogatories, document requests, and requests for admission. (Greifinger Decl.,

¶ 4.) Plaintiff's investigation and discovery focused on identifying the universe of Subject Products that were marketed and labeled as being made in the U.S.A. when the sheaths were in fact made in Mexico during the Class Period. Plaintiff has ascertained that Buck Knives sold about 36,082 Subject Products either directly or through retailers during the Class Period. (Greifinger Decl., ¶ 5.) The retail price of equivalent replacement foreign-made sheaths produced by Defendant ranged from about $10 to $26. (*Ibid*.) The extensive document and information exchanges have allowed Plaintiff's counsel to appreciate the strengths and weaknesses of the claims alleged against Defendant and the benefits of the proposed Settlement. (Greifinger Decl., ¶ 6.)

**C.    The Parties settled at a settlement conference before Magistrate Steve Kim.**

The parties engaged in preliminary settlement discussions during the months after Plaintiff filed the FAC. (Greifinger Decl., ¶ 7.) On September 29, 2021, the Parties participated in an all-day settlement conference before the Hon. Steve Kim, magistrate judge for the United States District Court, Central District of California. With Magistrate Kim's assistance and guidance, the Parties negotiated a complete settlement of Plaintiff's claims. Mr. Houriani fully participated throughout the settlement conference. (Greifinger Decl., ¶ 8.) The Parties then drafted the Settlement Agreement now before the Court for final approval. (Greifinger Decl., ¶ 10; Dkt. 29-2.)

The Parties negotiated the settlement at arm's length and the relief negotiated on behalf of the Settlement Class is fair, reasonable, and valuable. Moreover, by settling now rather than proceeding to trial, Class Members will avoid the significant risks of litigation and will not have to wait, possibly years, for their claims to be resolved through a trial and a possible appeal.

As discussed below, the proposed Settlement satisfies all criteria for approval under rule 23 of the Federal Rules of Civil Procedure (28 U.S.C.).[1] Accordingly, Plaintiff respectfully requests that this Court provisionally certify the Settlement Class and grant preliminary approval of the Settlement.

**D.    The terms of the Settlement resolve claims between Defendant and the Settlement Class**

**1.    *Composition of the Settlement Class***

The Settlement Class is defined as: "all persons who, during the Class Period, purchased any and all Subject Products labeled 'Made in the USA' from Buck Knives and/or any retailer, in California. Excluded from the Class are (a) Buck Knives' Board members or employees, including its attorneys; (b) any persons who purchased Subject Products for purposes of resale; (c) distributors or resellers of the Subject Products; (d) the judge and magistrate presiding over the Action and their immediate families; (e) governmental entities; and (f) persons or entities who or which timely and properly exclude themselves from the Class as provided in [the Settlement] Agreement." (Settlement Agreement, § II, ¶ A-12.)

**2.    *Settlement Consideration***

Plaintiff and Defendant have agreed that Class Members will receive up to $10 for each Subject Product purchased, up to a maximum of three claims ($30 in cash) out of a pool of $200,000 less Plaintiff's service award. (Settlement Agreement, § III, ¶¶ A-1 & A-2.) If there are any funds remaining in the Escrow Fund after all Claims have been paid or any un-cashed checks made payable to Class Members ("Residual Funds"), the Settlement Administrator shall distribute the remaining Escrow Funds and/or Residual Funds to the California Consumer Protection Foundation as the *cy près* beneficiary. (Settlement Agreement, § III, § D-2; Feb. 10, 2022, Trent Malone Decl., Dkt. 32-6.) No remaining funds from the

---

[1] All further references to rules in this brief are to the Federal Rules of Civil Procedure U.S.C.) unless otherwise indicated.

Escrow Funds or Residual Funds will be returned to Buck Knives. (Settlement
Agreement, § III, § D-2)

Defendant has also agreed to injunctive relief, and to implement changes
within 10 days of the Final Settlement Date. (Settlement Agreement, § III, ¶ E.)
All clam packaging for Subject Products, produced after the Final Settlement
Date, that contains an imported sheath will no longer include the phrase "Made in
the USA" on the front of the clam packaging unless such phrase specifically
states, "Knife Made in the USA." On the back, in clear readable font, the clam
packaging will include the following phrase, or words to similar effect, "Imported
Sheath" unless and until a change in either federal or California law obviates the
need for such clarification. (Settlement Agreement, § III, ¶ E-1.) For all Subject
Products produced after the Final Settlement Date, all box packaging for Subject
Products, produced after the Final Settlement Date, which contain an imported
sheath will no longer include the phrase "Made in the USA" on the exterior of the
box packaging unless such phrase specifically states, "Knife Made in USA." On
the back or bottom, in clear readable font, the box packaging will include the
following phrase, or words to similar effect, "Imported Sheath" unless and until a
change in either federal or California law obviates the need for such clarification.
(Settlement Agreement, § III, ¶ E-2.) Buck Knives will implement reasonable
policies and practices intended to ensure that the modified clam packaging and
box packaging is used in all California retail stores. (Settlement Agreement, § III,
¶ E-3.)

**3.    *Release by Plaintiff and the Settlement Class***

In exchange for the settlement consideration, Class Members who do not
opt out will agree to release all claims in the operative FAC. The Settlement
Agreement provides:

B. 'Released Claims:'

In consideration of the Settlement benefits described in this Agreement, Plaintiff and the other members of the Class, on behalf of themselves, their heirs, guardians, assigns, executors, administrators, predecessors, and/or successors, will fully, finally and forever release, relinquish, acquit, and discharge the Released Parties from - and shall not now or hereafter institute, maintain or assert on their own behalf, on behalf of the Class, or on behalf of any other person or entity - the claims asserted in any of the Complaints in this Action and/or any claim based on the same factual predicate as any of the claims asserted in any of the Complaints in this Action. For the avoidance of doubt, the Parties intend this class release to extend to the furthest extent allowed by *Hesse v. Sprint Corporation*, 598 F.3d 581 (9th Cir. 2010). Released Claims do not include any claims that cannot be released as a matter of law.

(Settlement Agreement, § VII, ¶ B.) Thus, by definition, there is no difference between the claims to be released and the claims in the Complaint.

**E.  The notice and claims administration processes were completed under the Court's order**

Under the Court's order preliminarily approving the Settlement Agreement, the Parties engaged Simpluris to provide settlement administration services. (Lechner Decl., ¶ 3.) Simpluris' duties have included, *inter alia*: (1) mailing and emailing the Notice of Class Action Settlement ("Notice") to all Class Members for whom Defendant had a mailing or email address on record as the case may be; (2) developing the settlement website and administering the online claims submission portal (see https://www.buckknivesclassaction.com);  (3) maintaining a toll-free telephone number, accessible 24/7, allowing Settlement Class members to listen to frequently asked questions or to speak with a call center representative during normal business hours; (4) publishing a summary of the Notice via internet banner advertisements on Google search pages; (5) publishing a summary of the Notice via LA Daily News, the Redding Record Searchlight, and the Stockton Record; (6) processing Claim Forms and Requests for Exclusion; and (7) providing weekly reports to counsel for the Parties. The notice

in electronic media received 1,766,283 impressions, which resulted in 1,070 "click throughs" to the settlement website. (Lechner Decl., ¶¶ 3, 7-14 .)

Simpluris formatted the Class Notice prepared jointly by Plaintiffs' Counsel and counsel for Defendant and approved by the Court. The Class Notice summarized the Settlement's principal terms, and advised Class Members about how to submit claims, opt out of the Settlement Class, and object to the Settlement, and the applicable deadlines for each option. (Lechner Decl., ¶ 4-5.) Separately, counsel for Defendant provided Simpluris with the Class List. (Lechner. Decl., ¶ 6.)

On March 3, 2022, Simpluris commenced the notice plan as outlined in the Settlement and the Court's Order Granting the Motion for Preliminary Approval of the Class Action Settlement. (Lechner Decl., ¶¶ 7, 11.) Simpluris disseminated long and short-form versions of the Notice by email and publication notice. There were 2,075 Settlement Class Members identified from Defendant's records. (Lechner Decl., ¶ 6.) The Notice Packet was transmitted electronically to 2,633 Class Members and was mailed to 1,225 Class Members. Of the notices mailed, 42 were returned. From the 42 returned notices, 11 were remailed and 31 were determined to be undeliverable. (Lechner Decl., ¶ 9.)

Class Members were given 90 days to opt out or object to the Settlement. Plaintiffs are pleased to report that only 27 Class Members opted out of the Settlement Class, and no Class Members have objected to the Settlement. (Lechner Decl., ¶ 14.)

Simpluris received a total of 1,993 claims, including 1,944 claims submitted electronically and 49 claims by mail. (Lechner. Decl., ¶ 15.) Simpluris is currently processing all Claim Forms received to determine their validity. (Lechner. Decl., ¶ 16.) This ongoing review process is to first identify fraudulent multiple claims and claims exceeding the number allowed by household. (*Ibid.*) Claims that are not duplicative or exceeding the number allowed by household

1  will then be reviewed for valid proof of purchase and documentation. (*Ibid.*) By

2  agreement of the parties, and in addition to the processes outlined in the

3  Settlement Agreement, Simpluris will provide each claimant who had submitted

4  an invalid claim 14 days to submit a valid claim. (Lechner. Decl., ¶ 18.)

<b>Argument</b>

**I.      This Court should grant final approval of the Settlement.**

**A.      Class certification requirements are met**

This Court certified the Class for settlement purposes upon Preliminary

Approval, finding that requirements under Rule 23(a) and Rule 23(b)(3) are

satisfied. (Dkt. No. 33.) Nothing has changed that would affect this Court's ruling

on class certification. (See *Chambers v. Whirlpool Corp.* (C.D. Cal. 2016) 214

F.Supp.3d 877, 877, affd. in part & vacated and remanded in part (9th Cir. 2020)

983 F.3d 645 [affirming preliminary approval order certifying settlement class

because "the circumstances have not changed" since that order]; see also *In re*

*Hyundai & Kia Fuel Economy Litigation* (9th Cir. 2019) 926 F.3d 539, 556

(*Hyundai*) [courts apply the criteria for class certification differently in litigation

classes and settlement classes].) Therefore, this Court should grant final

certification of the settlement class.

**B.      The factors to be considered by the court favor approval of the**
**         settlement.**

Rule 23(e) requires the court to determine whether a proposed settlement is

fundamentally fair, adequate, and reasonable. (*Hanlon v. Chrysler Corp.* (9th Cir.

1998) 150 F.3d 1011, 1026 (*Hanlon*), overruled on other grounds by *Wal-Mart*

*Stores, Inc. v. Dukes* (2011) 564 U.S. 338 [131 S.Ct. 2541, 180 L.Ed.2d 374].)

Strong judicial policy favors settlements, particularly where complex class action

litigation is concerned. (*Class Plaintiffs v. City of Seattle* (9th Cir. 1992) 955 F.2d

1268, 1276.) Courts show deference to the private consensual decision of the

parties where the court can "reach a reasoned judgment that the agreement is not

8

the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." (*Hanlon* at p. 1027.)

In assessing a settlement proposal, the court must balance a number of factors (*Hanlon* factors): The strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout trial; the amount offered in settlement; the extent of discovery completed and the stage of proceedings; the presence of a governmental participant;[2] the experience and views of counsel; and the reaction of class members. (*Hanlon, supra,* 150 F.3d at 1026.)

Rule 23(e)(2) directs the court to consider whether "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other."  The Advisory Committee's notes clarify that these considerations do not displace the *Hanlon* factors, but instead aim to focus the court and attorneys on "the core concerns of procedure and substance that should guide the decision whether to approve the proposal." (*In re Extreme Networks, Inc. Securities Litigation* (N.D. Cal. July 22, 2019, No. 15-04883) 2019 WL 3290770 at *6, quoting Advisory Committee Notes to 2018 Amendments Fed. R. Civ. P. 23(e)(2).)

---

[2] There is no governmental participant in this case.

Additionally, for class action settlements prior to contested certification, the Ninth Circuit further requires that the Court scrutinize the settlement even more closely, applying the so-called *Bluetooth* factors. (*In re Bluetooth Headset Products Liability Litigation* (9th Cir. 2011) 654 F.3d 935, 946-947 (*Bluetooth*); *Allen v. Bedolla* (9th Cir. 2015) 787 F.3d 1218, 1224.) As set forth below, the Settlement satisfies all of these factors, meriting final approval.

1. ***Class Representative and Plaintiff's' Counsel adequately represented the Class and the settlement was negotiated at arm's length***

Under Rule 23(e)(2)(A) and (B), the court considers whether the plaintiff and plaintiff's counsel adequately represented the class and whether the proposed settlement was negotiated at arm's length. In this case, there is no suggestion of a conflict between the Class Representative and Plaintiff's Counsel on the one hand, and Class Members on the other. (See *In re Online DVD-Rental Antitrust Litigation* (9th Cir. 2015) 779 F.3d 934, 942 [speculative or trivial conflicts not basis for denial of class certification].) Plaintiff and Class Counsel vigorously pursued the claims on behalf of the Class before reaching the Settlement. The Settlement is the product of arm's length negotiations after a mediation before the Hon. Steve Kim, magistrate judge for the United States District Court, Central District of California.

2. ***The Settlement provides valuable relief to the Class***

Under Rule 23(e)(2)(C), the court determines of the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). Rule 23(e)(2)(C)(i-iii) overlap with the first three *Hanlon* factors.

*a.*     ***The relief provided by the settlement is adequate taking into account the costs, risks, and delay of trial and appeal.***

In determining whether a settlement agreement is fair, adequate, and reasonable to all concerned, the court may consider the strength of the plaintiff's case and the amount offered in settlement, among other factors. (*Linney v. Cellular Alaska Partnership* (9th Cir. 1998) 151 F.3d 1234, 1242.) "Ultimately, the district court's determination is nothing more than an 'amalgam of delicate balancing, gross approximations, and rough justice' [Citation]." (*Officers for Justice v. Civil Service Commission of the City and County of San Francisco* (9th Cir. 1982) 688 F.2d 615, 625.) The Ninth Circuit puts a good deal of stock in the product of an arm's length, non-collusive, negotiated resolution and never prescribes a particular formula by which that outcome must be tested. (*Rodriguez v. West Publishing Corp.* (9th Cir. 2009) 563 F.3d 948, 965.) Courts in the Ninth Circuit take this holistic approach as opposed to parsing the strength of the plaintiff's case on the merits balanced against the amount offered in settlement by quantifying the net expected value of continued litigation to the class. (*Ibid.*)

Based on information and data produced by Defendant, Plaintiff determined that Defendant sold about 36,082 Subject Products, with the retail price of equivalent replacement foreign-made sheaths produced by Defendant ranging between about $10 and $26. Had Plaintiff proceeded to trial, he would have sought restitution of those amounts and would also have asked for a judgment compelling Defendant to cease misrepresenting that the sheaths were made in the USA.

As with any complex action, continued litigation of Plaintiff's claims presents various risks. First, there is a risk that Plaintiff will obtain no relief for Class Members. Second, there is a risk that even if Plaintiff's claim has merit, he will not succeed in certifying a class. In particular, Defendant would likely argue that the common issue of fact requirement in Rule 23(a) is lacking because each

1  Class Member's reliance on Defendant's packaging and advertising must be
2  evaluated on an individual basis.

3      Balancing against the significant costs, risks, and delays that further
4  litigation would pose, the Settlement provides an excellent result. Class Members
5  will be reimbursed for all or a substantial part of the retail value of the foreign-
6  made sheaths. Defendant has and will change its advertising and marketing
7  practices to ensure that consumers are not misled into believing that its sheaths are
8  made in the U.S.A. This is a substantial benefit to Class Members. And even if it
9  could be argued that one might possibly achieve a better result at trial, the relief
10  afforded the Settlement Class is adequate. (See *National Rural*
11  *Telecommunications Cooperative v. DIRECTV, Inc.* (C.D. Cal. 2004) 221 F.R.D.
12  523, 527 [well-settled law that a proposed settlement may be acceptable even
13  though it amounts to only a fraction of the potential recovery at trial].)

14  **b.    *The Settlement provides an effective method of processing claims and***
15  ***distributing relief to the Settlement Class.***

16      The Settlement Administrator gave notice of the Settlement by electronic
17  means and/or First Class mail to all known Class Members. The Settlement
18  Administrator conducted an extensive print and electronic campaign to notify
19  unknown Class Members of the Settlement and to afford them ample opportunity
20  to submit claims. The Settlement Administrator will transmit checks or, if
21  selected, electronic payments to all known Class Members who have not excluded
22  themselves from the Settlement and to all unknown Class Members who have
23  submitted valid claims. Notice and payment are at no cost to Class Members. This
24  method is the most effective for processing claims and distributing relief.

25  **c.    *The terms and timing of the proposed attorneys' fees award are***
26  ***appropriate.***

27      The Settlement provides Plaintiff's Counsel will not seek an award of fees
28  and costs in excess of $100,000 and that Defendant will not oppose or impede a

fee application in that amount. (Settlement, § VIII, ¶ A.) Plaintiff's counsel are accepting a significant discount from their Lodestar. Plaintiff's Counsel will not receive payment of fees and costs until after final approval. (*Ibid.*) The appropriateness of the attorneys' fees request is set forth in the separately filed motion for attorneys' fees and incentive award. (Dkt. 36.)

### 4.    The Settlement treats Class Members equitably relative to each other.

Under Rule 23(e)(D), the court must consider whether the settlement treats class members equitable relative to each other. The Settlement here treats all Class Members identically. All Class Members receive up to $10 per Subject Product purchased up to a maximum of $30. The injunctive relief protects all consumers, including all Class Members. No segment of the Class is given preferential treatment. Moreover, as set forth in the separately filed motion for attorneys' fees and incentive award (Dkt. 36.), the service award sought by Plaintiff is modest.

### 5.    The extent of discovery completed supports final approval.

Plaintiff's investigation and discovery focused on identifying the universe of Buck Knives knife-and-sheath combinations that were marketed and labeled as being made in the U.S.A. when the sheaths were in fact made in Mexico ("Subject Products") during the Class Period. (Greifinger Decl., ¶ 5.) Plaintiff ascertained that Buck Knives sold about 36,082 Subject Products either directly or through retailers during the Class Period. (*Ibid.*) The retail price of equivalent replacement foreign-made sheaths provided by Defendant ranged from about $10 to $26. (*Ibid.*) The extensive document and information exchanges have allowed Plaintiff's counsel to appreciate the strengths and weaknesses of the claims alleged against Defendant and the benefits of the proposed Settlement. (Greifinger Decl., ¶ 6.)

"'[F]ormal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement. [Citation.]" (*Linney v. Cellular Alaska Partnership* (9th Cir. 1998)

151 F.3d 1234, 1239.) A settlement negotiated at an earlier stage in the litigation may be approved so long as sufficient investigation has been conducted. (See *Eisen v. Porsche Cars N. Am*. (C.D.Cal. Jan. 30, 2014, No. 11-09405-CAS) 2014 WL 439006 at *4.)

Based on the formal and informal discovery in this case, Plaintiff's Counsel were able to realistically assess the value of the Settlement Class' claims and intelligently engage defense counsel in settlement discussions that culminated in the proposed settlement now before the Court. (Greifinger Decl., ¶ 10.) Plaintiff's Counsel can opine that the Settlement, for the consideration and on the terms set forth in the Settlement Agreement, is fair, reasonable, and adequate, and is in the best interests of Class Members in light of all known facts and circumstances, including the risk of significant delay and uncertainty associated with litigation, various defenses asserted by Defendant. (Greifinger Decl., ¶ 11.)

**6.**  *The views of experienced Class Counsel supporting the Settlement should be accorded substantial weight.*

As the Settlement is the result of arm's length negotiations by experienced class counsel, it is entitled to an initial presumption of fairness. (*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation* (N.D.Cal. July 29, 2016, No. 2672 CRB (JSC)) 2016 WL 4010049 at *14.) "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." (*In re Pacific Enterprises Securities Litigation* (9th Cir. 1995) 47 F.3d 373, 378.) Here, the Parties achieved a settlement after a thorough review of relevant documents, as well as a rigorous analysis of the parties' claims and defenses. The expectations of all parties are embodied by the Settlement, which, as set forth above, is non-collusive, being the product of arm's length negotiations and finalized with the assistance of Magistrate Judge Kim. The Parties were also represented by experienced class action counsel throughout the negotiations

14

1  resulting in this settlement. Plaintiff's Counsel are seasoned class action attorneys.

2  (Greifinger Decl., ¶¶ 12-15.) Defendant was represented at all stages of the

3  litigation, including the mediation by Garrett & Tully, P.C., a well-respected firm

4  with a robust class action defense practice. The Court should give credence to

5  Class Counsel's opinion that the Settlement is fair and reasonable.

6  *7.*      ***The reaction of Class Members to the proposed Settlement supports final***

7              ***approval.***

8              As discussed above, only 27 individuals opted out of the Settlement Class,

9  and not a single Class Member objected to the Settlement. (Lechner Decl., ¶ 14.)

10  This small percentage of exclusions and the complete absence of objection

11  demonstrates that Class Members have reacted favorably to the Settlement,

12  supporting final approval. (See, e.g., *Eisen v. Porsche Cars North America, Inc.*

13  (C.D.Cal. Jan. 30, 2014, No. 2:11-cv-09405) 2014 WL 439006 at *5 [243

14  exclusions and 53 objections out of 235,152 class notices]; *Milligan v. Toyota*

15  *Motor Sales, U.S.A.* (N.D. Cal. Jan. 6, 2012, No. 09-05418-RS) 2012 WL

16  10277179 at **1, 7 [364 exclusions and 67 objections following a mailing of

17  613,960 notices].)

18              The claims rate of 5.52 percent [1,993 claims for 36,082 Subject Products

19  sold] is congruent with claims rates observed in consumer class action settlements

20  granted final approval by federal courts. (See *Bayat v. Bank of the West* (N.D.Cal.

21  April 15, 2015, No. C-13-2376-EMC) 2015 WL 1744342 at *1 [claims for the

22  monetary relief portion of the settlement made by 16,459 of 871,837 potential

23  class members, roughly 1.9 percent]; *Rose v. Bank of America Corp.* (N.D.Cal.

24  Aug. 29, 2014, No. 5:11-CV-02390-EJD) 2014 WL 4273358 at *5 [227,701

25  (about 3 percent) of about 7 million class members filed claims]; *Moore v. Verizon*

26  *Communications Inc.* (N.D.Cal. Aug. 28, 2013, No. 09-1823) 2013 WL 4610764

27  at *8 [250,236 (about 3.1 percent) of 8,089,893 class members filed claims];

28  *Spillman v. RPM Pizza, LLC* (M.D.La. May 23, 2013, No. CIV-A-10-349-BAJ)

2013 WL 2286076 at *2 [less than one percent of the total class filed claims in Telephone Consumer Protection Act class action]; *Grannan v. Alliant Law Group, P.C.* (N.D. Cal. Jan. 24, 2012, No. C10- 02803 HRL) 2012 WL 216522 at **2-3 [1,986 (about 1.4 percent) of 137,891 class members filed claims]; *Perez v. Asurion Corp*. (S.D.Fla. 2007) 501 F.Supp.2d 1360, 1377 [118,663 (about 1.2 percent) of about 10.3 million class members filed claims]; see also *Sullivan v. DB Investments, Inc*. (3d Cir. 2011) 667 F.3d 273, 329, fn. 60  ["consumer claim filing rates rarely exceed seven percent, even with the most extensive notice campaigns"].).

Additionally, as noted above, as a supplement to the class notice plan approved by this Court, the Settlement Administrator will provide all claimants who submitted defective claims an opportunity to cure. (Lechner Decl., ¶ 18.)

### 8.    *The Settlement satisfies the Bluetooth factors*

Because the parties reached this class action Settlement prior to contested certification, the Ninth Circuit further requires that this Court scrutinize the settlement even more closely, applying the so-called *Bluetooth* factors. (*In re Bluetooth, supra,* 654 F.3d at pp. 946-947; *Allen v. Bedolla, supra,* 787 F.3d at p. 1224.) As set forth below, the Settlement satisfies all of these factors, meriting final approval.

The court must assure itself that the settlement was not the product of collusion by checking for subtle signs that class counsel have allowed pursuit of their own self-interests to infect the negotiations. (*Allen v. Bedolla, supra,* 787 F.3d at p. 1224.) The Ninth Circuit has identified three such subtle signs: "(1) 'when counsel receive a disproportionate distribution of the settlement;' (2) 'when the parties negotiate a "clear sailing' arrangement"' (i.e., an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a reverter that returns unclaimed fees to the defendant." (*In re Bluetooth, supra,* 654 F.3d 935, 947 (*Bluetooth*).) "For all these factors, 'subtle

signs,' and red flags, however, the underlying question remains this: Is the settlement fair?" (*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation, supra,* 895 F.3d at p. 611.)

With the exception of the "clear sailing" provision, none of the three factors in *Bluetooth* are present here. Plaintiffs' counsel do not seek a disproportionate share of fees and there is no reverter of unclaimed funds to Defendant. The Parties negotiated the settlement with the assistance of the Hon. Steven Kim during a daylong voluntary settlement conference. Magistrate Kim helped to manage the Parties' expectations and provided a useful, neutral analysis of the issues and risks to both sides. (Greifinger Decl., ¶ 8.) Magistrate Kim's participation in the settlement conference weighs considerably against any inference of a collusive settlement. (See *D'Amato v. Deutsche Bank* (2d Cir. 2001) 236 F.3d 78, 85 [appointed mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure].) At all times, the Parties' negotiations were adversarial and non-collusive.

The Parties were represented by experienced class action counsel throughout the negotiations resulting in this Settlement. As this Settlement is the result of arm's length negotiations by experienced class counsel, it is entitled to an initial presumption of fairness. (*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation, supra,* 2016 WL 4010049 at *14.)

### Conclusion

The Parties have negotiated a fair and reasonable settlement providing significant benefits to the Class and have conducted the notice process approved by this Court. Plaintiff respectfully submits that this Court should grant final approval to the Settlement.

///

///

1    Dated: July 7, 2022

2

3    **LAW OFFICES OF DAVID R. GREIFINGER**

4    **MARSHALL AND ASSOCIATES**

5

6    By: /s/ David R. Greifinger
     DAVID R. GREIFINGER

7    CALVIN A. MARSHALL
     JOHN A. MARSHALL

8    *Attorneys for Plaintiff*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CASE NO. 2:21-cv-01908-DSK-SK

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**PROOF OF SERVICE**

I am employed in the State of California, County of Los Angeles. I am over the age of 18 and not a party to the within suit; my business address is 15515 W. Sunset Boulevard, Unit 214, Pacific Palisades, California 90272.

On July 7, 2022, I served the documents described as **MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** on the interested parties in this action by sending the interested parties in this action by sending [    ] the original [or] [✓] a true copy thereof [✓] to interested parties as follows [or] [✓] as stated on the attached service list.

☐ **BY MAIL (ENCLOSED IN A SEALED ENVELOPE):** I deposited the envelope(s) for mailing in the ordinary course of business at Los Angeles County, California. I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing. Under that practice, sealed envelopes are deposited with the U.S. Postal Service that same day in the ordinary course of business with postage thereon fully prepaid at Los Angeles County, California.

☒ **BY E-MAIL:** I hereby certify that this document was served from Los Angeles County, California, by e-mail delivery on the parties listed herein at their most recent known e-mail address or e-mail of record in this action.

☐ **BY FAX:** I hereby certify that this document was served from Los Angeles County, California, by facsimile delivery on the parties listed herein at their most recent fax number of record in this action.

☐ **BY PERSONAL SERVICE:** I caused to be delivered by messenger such envelope(s) by hand to the office of the addressee(s).

☐ **BY OVERNIGHT DELIVERY:** I am "readily familiar" with this firm's practice of collection and processing correspondence for overnight delivery. Under that practice, overnight packages are enclosed in a sealed envelope with a packing slip attached thereto fully prepaid. The packages are picked up by the carrier at our offices or delivered by our office to a designated collection site.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed July 7, 2022, at Los Angeles County, California.

_____
/s/ Calvin A. Marshall
Calvin A. Marshall

1

**SERVICE LIST**

2

3

Stephen J. Tully, SBN 112390
stully@garrett-tully.com
Trang T. Tran, SBN 204481
ttran@garrett-tully.com
Nicholas D. Lauber, SBN 288499
nlauber@garrett-tully.com
**GARRETT & TULLY, P.C.**
4165 E. Thousand Oaks Blvd., Suite 201
Westlake Village, California 91362-3839
Telephone: (805) 446-4141
Facsimile: (805) 446-4135
*Attorneys for Defendant, Buck Knives, Inc.*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CASE No. 2:21-cv-01908-DSK-SK
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT